[No. 7566.    Decided May 13, 1909.]

GUGGENHEIME & COMPANY, *Appellant*, v. GEORGE YOUELL
*et al., Respondents.*[1]

PRINCIPAL AND AGENT—EXISTENCE OF RELATION—SECRET AGREEMENT—EVIDENCE—SUFFICIENCY. Findings that there was a secret agreement that one C. should act as agent for defendant company in buying fruit, are sustained where it appears that the company furnished C. with money which he deposited in his own name and personally checked out in payment for fruit purchased for the company, and that the general agent of the company, prior to the time in question, told the bank they would discontinue the practice, and left orders as to whom the money was to be disbursed and had a quiet arrangement with the bank to be notified if it was disbursed otherwise, but did not order C. to discontinue the practice.

PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—PURCHASER IN GOOD FAITH FROM AGENT—ESTOPPEL—SET-OFF AGAINST PRINCIPAL. Where a dealer in fruit secretly employs as its agent to purchase fruit one who had for two years been engaged in the same business on his own account, furnishing such agent moneys therefor to be deposited in his own name and personally checked out, and permitted the agent to store the fruit purchased as the agent's property and exercise all acts of ownership over the same, when the custom of agents in that locality was to buy in the names of their principals, the principal is estopped from claiming the property or questioning the right of an innocent purchaser, after the agent had sold and delivered the fruit as his own property; especially in view of the laws of that state to the effect that one dealing with an agent with-

[1]Reported in 101 Pac. 711.

out knowledge of, or reason to believe in, the agency, may set off against the principal any claim which he might set off against the agent.

Appeal from a judgment of the superior court for Pierce county, Reid, J., entered April 11, 1908, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action for conversion. Affirmed.

*Blattner & Chester* and *L. B. da Ponte*, for appellant.

*S. F. McAnally*, for respondents.

DUNBAR, J.—This is an action by appellant against respondents for the recovery of the market value of a certain lot of dried peaches, alleged to have been converted by respondents on or about October 28, 1907, in the city of Winters, Yolo county, California, and shipped thence to Tacoma, Pierce county, Washington. Respondents answered, in substance, that they had purchased the peaches from one A. P. Craner, the agent of appellant, but that Craner's agency was unknown to and concealed from respondents, and that Craner appeared to be the owner of the peaches. At the time of filing the complaint in this action, the goods were attached, and afterwards replevined by appellant, and it was stipulated at the trial that the appellant could keep the goods and, if judgment should be for respondents, it should be for the value of the goods. This cause was tried to the court, and resulted in a judgment for respondents in the sum of $2,165.11, which included $1,443.30, the value of the peaches; $196.81, profits respondents would have made on a resale thereof; $125, expense of taking depositions in California; and $400 attorney's fees. The attorney's fees were afterwards remitted. The court made and filed findings of fact and conclusions of law.

The court found, among other things, that, for two years or more prior to October 28, 1907, one A. P. Craner had been continuously residing at the town of Winters, California, and during such time had been engaged continuously in buying

and selling fruit and orchard products generally, for a profit, on his own account, in, around, and near said town of Winters; that in the month of October, 1907, the plaintiff furnished to said Craner cash, which was deposited by the plaintiff, or by said Craner with the full knowledge of the plaintiff, in the private account then and theretofore kept by said Craner in the Bank of Winters; that said cash was so furnished and deposited subject to the unrestricted private check of the said Craner, as his own cash and account; that said cash was so furnished to said Craner by plaintiff in pursuance of a private secret arrangement with said Craner that said Craner would purchase some fruit for the plaintiff.

The court then finds, in substance, that, in pursuance of said secret arrangement, Craner did purchase a large quantity of Muir peaches then stored in the warehouse of the Winters Dried Fruit Company; that said peaches were allowed to stay there in the care of said Craner as his property; that Craner with his own personal check against the private bank account aforesaid paid the necessary charges of storing, handling, packing, and shipping said fruit, and exercised, as far as the public could observe, all the acts of ownership over said fruit; and that while the fruit was so stored, Craner sold and delivered to defendants fourteen thousand six hundred and eighty pounds of said fruit, which the defendants purchased in good faith for full cash value then and there paid the said Craner.

There is no question raised as to the amount of the judgment in this case, if the respondents were entitled to recover at all. Many other findings were made by the court, but these we think are sufficient for the purpose of determining the case, and the point to be decided is whether respondents took a good title to the fruit through the purchase from Craner.

The appellant excepts to a great many of the findings of fact, but especially to the finding that there was a secret understanding between Craner and the appellant and the bank in relation to a private understanding that Craner would

purchase fruit for appellant with the moneys deposited in Craner's name and on Craner's account in the Bank of Winters. But the correctness of the findings is clearly shown, we think, by the testimony of the cashier of the bank, as well as by the testimony of Mr. Bailey, the general agent for the appellant in that part of the country. Mr. Bailey went up to the bank to talk this matter over with the cashier and with Mr. Craner. He testified that he found out from the cashier that Craner was actually buying this fruit, giving his personal check in his own name. One Mason was the purchasing agent for respondents. In answer to the question:

"Now, when you were informed of this by the cashier of the Bank of Winters, prior to the time of Mr. Mason paying the money, what steps, if any, did you take as general agent for Guggenheime & Company over this territory, in reference to Mr. Craner, your sub-agent, to suppress that practice?"

he answered:

"I told the bank that we would discontinue practice of that kind. I waited until Mr. Craner came up that night, arranged a meeting with the bank cashier, Mr. Craner and myself, and arranged that no more drafts should be drawn in that manner. Question: You mean checks? Answer: No, I mean drafts, and funds belonging to the company deposited in his name. Also left a memorandum with him to whom the money was to be disbursed, and had a quiet arrangement for them to call me up, if the money was disbursed in any other way, Monday."

That was prior to the payment of the Bowman lot of peaches. But the witness testifies that he did not notify Mr. Craner of this arrangement. He also stated that he had arranged with the cashier, prior to Mr. Craner's arrival, to notify him of the disbursements if they were irregular. Again, when asked if he had a private understanding with the cashier of the Bank of Winters, that if Mr. Craner attempted in the future to pursue that practice, the cashier should give him notice, he testified, no, that he was simply to be notified of the disbursement of this specific sum of money which belonged

to his principal, and that if it was disbursed contrary to the orders he had given, that he was to be notified. Knowing the character of the man, as is indicated by the testimony of Mr. Bailey, and that he was pursuing an irregular course with the money of the appellant which had been allowed to be deposited in his name, it still left the money there subject to his check. It is not denied that he was its purchasing agent for peaches. It also appears from the testimony that he had been buying and selling fruit and orchard products on his own account for two years, at least, prior to this transaction, and when the appellant made a secret purchasing agent of a man who had thus been engaged in the same business, viz., purchasing fruit, and was known by the community to be independently engaged in that business, placing money in his hands to be used as his own-money, it seems to us that it should be estopped from questioning the right of an innocent purchaser to claim and maintain what it bought and paid for under such circumstances. It was proven that the custom in that country was for agents to purchase in the name of their principals, and to make deposits of their principals' money in the name of the principal.

The laws of California were pleaded and proven, to the effect that one who deals with an agent without knowing or having reason to believe that the agent acts as such in the transaction, may set off against any claim of the principal arising out of the same, all claims which he might have set off against the agent before notice of the agency. The laws of California also provide that no person acting as agent for another shall deal in his own name, unless it is the custom of the business in which he is engaged for him so to do. It is said by the appellant that this California law is only an enunciation of the common law, but however that may be, it seems to be applicable to this case. It is conceded by the appellant that the respondents purchased this fruit without knowledge of appellant's interest, and bought the same in good faith believing it to belong to Craner. This, in con-

nection with the laws of California, it seems to us, conclusively prohibits the appellant from recovering in this action, for the custom was undoubtedly shown to be exactly opposite to the manner in which Craner transacted his business.  He was, therefore, violating the law of the state with the knowledge and consent, as is unquestionably shown by the testimony, of the appellant, and the laws of California providing a remedy for a person who deals with an agent without knowing that the agent acts as such, in connection with the admitted fact that such was the case on the part of the respondents, further discussion, it seems to us, is rendered useless.

The judgment will be affirmed.

RUDKIN, C. J., CROW, MOUNT, and FULLERTON, JJ., concur.

CHADWICK, GOSE, PARKER, and MORRIS, JJ., took no part.